UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CAROL A. WOISCHKE,

              Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

              Defendant.

CASE NO.    C07-5704RJB-KLS

REPORT AND
RECOMMENDATION

Noted for August 29, 2008

Plaintiff, Carol A. Woischke, has brought this matter for judicial review of the denial of her

application for supplemental security income ("SSI") benefits. This matter has been referred to the

undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as

authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties'

briefs and the remaining record, the undersigned submits the following Report and Recommendation for

the Honorable Ronald J. Bryan's review.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

Plaintiff currently is 45 years old.[1] Tr. 38. She graduated from high school and completed one year

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to
Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

of college. Tr. 77. She has past work experience as a veterinary assistant and cashier. Tr. 18, 72, 80.

Plaintiff originally filed applications for disability insurance and SSI benefits in 1992. Tr. 17. Both applications were denied initially on May 1, 1992. Id. Plaintiff did not appeal that denial. Id. She again filed applications for SSI and disability insurance benefits on August 27, 2001, and September 12, 2001, respectively, alleging disability as of January 1992, due to cluster headaches, migraine headaches with vision loss, temporomandibular joint ("TMJ") disorder, tinnitus in both ears, a history of two aneurysms, and panic attacks. Tr. 18, 62, 71, 356. Her applications were denied initially and on reconsideration. Tr. 38-40, 45, 359-61.

Plaintiff requested a hearing, which was held on July 14, 2003, before an administrative law judge ("ALJ"). Tr. 376. At the hearing, plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr. 376-422. On December 29, 2003, the ALJ issued a decision determining plaintiff to be not disabled, finding specifically in relevant part as follows:

(1)     at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)     at step two, plaintiff had "severe" impairments consisting of an anxiety disorder, a somatic pain disorder, depression, some intellectual deficits, low back pain, cervical pain, and headaches;

(3)     at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)     at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded her from performing her past relevant work; and

(5)     at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 17-30. The ALJ also denied plaintiff's request to reopen her 1992 applications. Tr. 17. Plaintiff's request for review was denied by the Appeals Council on July 30, 2004 as well. Tr. 6.

Plaintiff sought judicial review of the ALJ's decision in this Court, arguing that decision should be reversed and remanded for an award of benefits, for the following reasons:

(a)     the ALJ erred in evaluating the medical evidence in the record;

(b)     the ALJ erred in finding plaintiff's mental impairments did not meet or equal the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(c)     the ALJ erred in assessing plaintiff's credibility; and

(d)     the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

On October 13, 2005, the undersigned issued a report and recommendation, finding that the ALJ properly determined plaintiff was not entitled to disability insurance benefits, because she failed to establish she was disabled prior to her date last insured. Tr. 455-56. The undersigned also found the ALJ properly evaluated the medical evidence in the record, conducted a proper step three analysis, and did not err in discounting plaintiff's credibility. Tr. 459-71. However, the undersigned determined that the ALJ did err in failing to adequately address plaintiff's problems with persistence and pace in assessing her residual functional capacity at step five of the sequential disability evaluation process. Tr. 471-73.

The undersigned therefore recommended that the case be remanded back to the Commissioner for further administrative proceedings, but solely for the purpose of re-considering the evidence in the record regarding plaintiff's problems with persistence and pace, and how any such problems impact her ability to perform other work existing in significant numbers in the national economy. Tr. 473-74. In addition, because plaintiff failed to establish disability prior to her date last insured, the undersigned found as well that re-consideration of plaintiff's ability to work, and therefore her eligibility to receive SSI benefits, should concern only that period of time beginning August 27, 2001, the date she protectively filed her application therefor. Tr. 455.

The Court adopted the undersigned's report and recommendation on November 14, 2003. Tr. 452. On remand, a new hearing was held before the same ALJ on May 8, 2007, at which plaintiff, again represented by counsel, appeared and testified, as did a vocational expert. Tr. 575-97. On June 27, 2007, the ALJ issued a new decision, once more determining plaintiff to be not disabled, finding specifically in relevant part:

(1)     at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2)     at step two, plaintiff had "severe" impairments consisting of cannabis abuse, a depressive disorder not otherwise specified, an anxiety disorder not otherwise specified, and status-post coil embolization of anterior communicating artery aneurysm;

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    at step four, plaintiff had the residual functional capacity to perform a modified range of light work – including a limitation to perform simple, repetitive tasks, with limited public contact and limited coworker contact at a competitive level of persistence and pace – which precluded her from performing her past relevant work; and

(5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 440-50. Plaintiff's request for review was denied by the Appeals Council on October 26, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 423; 20 C.F.R.§ 416.1481.

On December 20, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). The administrative record was filed on March 20, 2008. (Dkt. #9). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, for the following reasons:

(a)    the ALJ erred in not finding her somatic pain disorder, cervical pain, TMJ syndrome, migraine headaches, and vascular dementia secondary to left carotid surgery to be severe impairments;

(b)    the ALJ erred in failing to give appropriate weight to the opinions of her treating and examining physicians;

(c)    the ALJ failed to properly consider the vocational evidence in the record;

(d)    the ALJ erred in failing to properly consider plaintiff's testimony regarding her symptoms and limitations;

(e)    the ALJ improperly determined plaintiff's residual functional capacity; and

(f)    the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to the Commissioner to again solely re-consider the evidence in the record regarding plaintiff's problems with persistence and pace, and how any such problems affect her ability to perform other jobs existing in significant numbers in the national economy. Although plaintiff requests oral argument in this matter, the undersigned finds such argument to be unnecessary here.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The Doctrine of the Law of the Case

As noted above, the Court remanded this matter to the Commissioner solely for the purpose of re-considering the evidence in the record regarding plaintiff's problems with persistence and pace, and how any such problems affect her ability to perform other jobs existing in significant numbers in the national economy at step five of the sequential disability evaluation process, and thus whether she is entitled to SSI benefits for the period beginning August 27, 2001. In all other respects, the Court affirmed the decision of the ALJ, either finding it to be free of legal error and supported by substantial evidence, or not making any particular finding with respect thereto due the lack of any specific challenge from plaintiff.

"Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." Richardson v. United States, 841 F.2d 993, 996 (9th Cir. 1988).[3] This doctrine "prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings." Brachtel v. Apfel, 132 F.3d 417, 419 (8th Cir. 1997); Old Person v. Brown, 312 F.3d 1036, 1039 (9th Cir. 2002) (doctrine founded upon sound policy that litigation must come to end). Indeed, a court "cannot efficiently perform its duty to provide expeditious justice to all if a question once considered and decided by it were to be litigated anew in the

_____

[3]The doctrine of the law of the case "is equally applicable in instances of remand [from courts] to administrative agencies and remand [from higher] to lower courts." Rios-Pineda v. United States Department of Justice, I.N.S., 720 F.2d 529, 532 (8th Cir. 1983), rev'd on other grounds, 471 U.S. 444 (1985); Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998) (doctrine requires agency, on remand from court, to conform its further proceedings to court's decision, unless compelling reason to depart therefrom exists); Brachtel v. Apfel, 132 F.3d 417, 419 (9th Cir. 1997).

same case upon any and every subsequent appeal." Old Person, 312 F.3d at 1039. The doctrine further

"serves to maintain consistency." Id.

As pointed out by plaintiff, the doctrine of the law of the case "is analogous to, but less absolute a

bar than, res judicata," and "is discretionary, not mandatory." Merritt v. Mackey, 932 F.2d 1317, 1320 (9th

Cir. 1991) (doctrine merely expresses practice of courts generally to refuse to reopen that which has been

decided, and is not limitation of courts' power); Moore v. Jas. H. Mathews & Co., 682 F.2d 830, 833 (9th

Cir. 1982). Nevertheless, that discretion should not be heavily employed:

> Although the law of the case rule does not bind a court as absolutely as res judicata,
> and should not be applied "woodenly" when doing so would be inconsistent with
> "considerations of substantial justice," the discretion of a court to review earlier
> decisions should be exercised sparingly so as not to undermine the salutory policy of
> finality that underlies the rule.

Moore, 682 F.2d at 833-34 (citations and internal footnote omitted).

Accordingly, the prior decision of a court "should be followed on a later appeal" unless: (1) "the

evidence on a subsequent trial was substantially different"; (2) "controlling authority has since made a

contrary decision of the law applicable to such issues," or (3) "the decision was clearly erroneous and

would work a manifest injustice." Merritt, 932 F.2d at 1320; see also Old Person, 312 F.3d at 1039;

Moore, 682 F.2d at 834. Thus, it is true as noted by plaintiff that "[n]ew evidence can furnish compelling

grounds for departure from a previous ruling." Wilder, 153 F.3d at 803. "[I]f there is no new evidence,"

however, or if "the evidence does not undermine the previous ruling on sufficiency, then that previous

ruling must stand." Id.

II.     The ALJ's Step Two Analysis

At step two of the sequential disability evaluation process, the ALJ must determine if an

impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's

mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); Social Security

Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes

necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v.

Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff

has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

Plaintiff did not challenge the ALJ's step two findings on appeal of his first decision to this Court, and, indeed, as noted above, this matter was not remanded back to the Commissioner for re-consideration of those findings. Accordingly, those findings remain the law of this case, unless there are compelling grounds, such as those set forth above, for departing therefrom. The undersigned find none to exist here. Plaintiff points out, however, that while the ALJ found her somatic pain disorder, cervical pain, TMJ syndrome or migraine headaches to be severe impairments in his first decision, he failed to do so in his second, most recent decision. Plaintiff argues this failure was error, as was his failure to then consider the effects of her migraine headaches at steps three through five.

The undersigned agrees it was error to fail to consider the above impairments as severe at step two. No reasons, compelling or otherwise, were provided by the ALJ for his decision to depart from his prior step two findings. Indeed, the ALJ himself expressly noted that those prior findings were affirmed by this Court. Tr. 443. As such, the prior step two findings, and not the more recent ones, remain the law of the case here. The undersigned, however, declines to find the ALJ erred in failing to consider the effects of plaintiff's migraine headaches at steps three through five. First, plaintiff has not shown the ALJ actually failed to do so. Second, the only error in this regard, as explained in further detail below, would be with respect to plaintiff's problems with persistence and pace. Again, though, while also as explained in further detail below the ALJ did err in considering those problems, plaintiff has not demonstrated any such failure by the ALJ specifically was due to failing to properly consider the effects of her headaches.

Lastly, plaintiff argues the ALJ erred by not finding her vascular dementia secondary to left carotid surgery to be a severe impairment. This impairment was diagnosed in early 2001. See Tr. 274. But the ALJ declined to find this impairment to be severe in his first decision, and, as noted above, plaintiff did not challenge that original finding. Further, as previously discussed, plaintiff has not presented any new or compelling evidence to depart from the Court's previous ruling affirming the ALJ's step two findings, and the undersigned declines to do so here. Accordingly, although the undersigned finds the ALJ erred in his step two analysis, he did so only in having departed from his prior such analysis. Because that error does

not affect the ultimate disability determination in this case, it is harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is irrelevant to ALJ's ultimate disability conclusion).

III.     The ALJ Erred in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of

a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A. <u>Dr. Hill</u>

In his second, most recent decision, the ALJ addressed the opinion of Edwin L. Hill, Ph.D., an examining psychologist, in relevant part as follows:

> The claimant underwent a neuropsychological evaluation in February and March 2001 with Edwin L. Hill, Ph.D. After an extensive interview and examination with the claimant, Dr. Hill found her attention, concentration, and memory to be grossly intact. During testing, the claimant was alert and cooperative and did not appear to be anxious or tense. She was easily able to comprehend and follow directions. . . . The doctor concluded that the claimant was best suited for a job that allowed her to work at her own pace and according to her own hours and schedule, with the maximum possible flexibility. . . .
>
> I have considered this opinion, but give it little weight for the following reasons. First, Dr. Hill was unaware – because the claimant did not inform him – of the claimant's history of and continued cannabis abuse. It is clear that this use would affect the claimant's concentration, persistence, and pace, as well as her ability to perform within a schedule. Additionally, it is clear from the context of the evaluation and testing that the claimant vehemently expressed her worries about not being on her own schedule. The doctor recorded the claimant's "significant fears that if her ability to control her schedule an [sic] activities were to be disrupted by the requirements of full time employment," she would have increased headache problems, increased TMJ symptoms, decreased physical functioning, cognitive problems, and anxiety attacks. . . . It seems Dr. Hill considered these fears to be well founded. But that conclusion is not borne out by the claimant's schedule, which she reported was filed with running a household with 2 school-aged children and several pets. The claimant reported that she got her 11-year old son ready for school every day, performed the household chores including yard work, and all of the cooking, cleaning, laundry, and household activities. She claimed that she had to perform these at her own pace because of limited endurance and stamina. Yet the claimant reported working on her crafts/woodworking projects from 1:00 to 6:00 p.m. most days and then in the evenings after she put the children to bed. The claimant reported going to bed most days until 3:00 or 4:00 a.m., and rising at 9:00. . . . By her own report, the claimant is independent in her activities of daily living plus caring for her children and several animals and pursuing ongoing crafts or other projects. Her fears about submitting to a schedule appear to be related to how busy she already is than to any legitimate worries that she would be unsuccessful in full-time work or that such work would lead to a deterioration in her health. It appears from the record that the claimant enjoys ordering her life around her children, animals, and hobbies and does not want employment to interfere with those pursuits. I therefore give little weight to Dr. Hill's opinion, due to his ignorance of the claimant's regular

marijuana use and the fact that he based his opinions on the claimant's subjective complaints and fears.

Tr. 444-45; <u>see also</u> Tr. 267-76.

Plaintiff argues the ALJ's reasons for rejecting Dr. Hill's opinion are not legitimate. Specifically, plaintiff asserts there is no evidence that she was using cannabis at the time of the evaluation performed by Dr. Hill, or that her history of cannabis use would have caused Dr. Hill to have a different opinion about her functional abilities. The undersigned disagrees that there was no evidence in the record that plaintiff was not using cannabis at the time of Dr. Hill's evaluation. Plaintiff reported in mid-October 2006, that she began "abusing cannabis in high school," and that she continued to use it at a rate of "approximately once per month." Tr. 504, 507. Given that plaintiff attended high school long before she was evaluated by Dr. Hill (<u>see</u> Tr. 77), she apparently was still using cannabis when he saw her.

On the other hand, the undersigned agrees that the record does not clearly show Dr. Hill would have opined differently had he been aware of plaintiff's continued cannabis use. In mid-October 2006, Christina H. Rasmussen, Ph.D., performed a psychological evaluation of plaintiff, opining that psychological testing performed suggested her "significant memory impairments" were "likely related to her reported aneurysm surgery, her history of substance abuse, her continued cannabis abuse, or a combination thereof." Tr. 506. Dr. Rasmussen also opined that plaintiff's ability to complete her activities of daily living was "likely impacted by her current depressive symptoms and continued substance abuse." Tr. 507. In addition, Dr. Rasmussen opined that plaintiff's "memory and concentration" would "likely improve significantly once her depressive symptoms" were treated and she maintained "complete sobriety." <u>Id.</u>

While this does constitute medical evidence that plaintiff's cannabis use has had a very real impact on her mental functional abilities, it does not specifically address her capabilities regarding persistence and pace, the sole issue on which this matter was remanded. Accordingly, although plaintiff's cannabis abuse history and her continued use of that drug certainly might have affected Dr. Hill's opinion with respect to her limitations in these latter two areas, it is far from clear that, as found by the ALJ, such history and use would do so. Further, while plaintiff's reported history indicates she had been abusing cannabis since high school, it is unclear exactly to what extent she was using it at the time of Dr. Hill's evaluation. The only indication concerning frequency of use in the record is plaintiff's report that she has continued to use it at

the rate of approximately once per month. But even if plaintiff did use it in February or March 2001, there is no evidence that such use occurred at or near the times the evaluation was conducted.

Plaintiff also notes that Dr. Hill's opinion was based on a very detailed evaluation, with included extensive neuropsychological testing. While true (see Tr. 271-74), this factor alone does not establish the legitimacy of an examining psychologist's opinion. Indeed, as discussed below, Dr. Hill's opinion also was based to a large extent on plaintiff's mental status examination and her own self-reports (see Tr. 268-71). Plaintiff asserts, however, that the ALJ erred in rejecting that opinion for the reason that it was based on her expressed fears concerning her ability to control her schedule and activities, whereas her own self-reports regarding her extensive activities of daily living contradicted those fears. Plaintiff argues this is not a valid basis for rejecting it, because she also testified that she carefully limited her activities of daily living so as to reduce her stress and the risk of getting panic attacks and migraines.

The undersigned finds though that the ALJ was not remiss in finding plaintiff's reported activities belied the fears she expressed to Dr. Hill. As noted above, the ALJ properly discounted her credibility in his prior decision, and that determination was based in part on those same daily activities. See Tr. 469-70. See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility). Plaintiff argues the ALJ misrepresented her testimony regarding her daily activities. But the record does not support plaintiff here for the reasons discussed above. That is, the ALJ properly discounted plaintiff's credibility based in part on the evidence concerning her daily activities in his prior decision, and that determination, as explained in further detail below, remains the law of this case.

Plaintiff argues it does not make sense for the ALJ to reject her as not credible, and then rely on her own reported activities of daily living to reject Dr. Hill's opinion. But plaintiff misses the point. She was found incredible in part because her reported activities of daily living were inconsistent with her allegations of disabling symptoms. Thus, it hardly is inconsistent to also discount the credibility of a medical source who relied in part on plaintiff's claimed inability to function in that area. Nevertheless, the undersigned agrees the ALJ erred in rejecting Dr. Hill's opinion because he based it only on her subjective complaints and fears. While the undersigned does not necessarily agree Dr. Hill's conclusions were based largely on the psychological testing he performed, it clearly played an important part of the basis therefor.

See Tr. 274-76. The ALJ, however, did not discuss this portion of Dr. Hill's report in his analysis thereof. Given that Dr. Hill felt plaintiff seemed "best suited" for a job which allowed her "to work at her own pace and according to her own hours and schedule with the maximum possible flexibility," the ALJ's errors here are not harmless, and thus require a second remand for further consideration thereof.

Lastly, plaintiff argues the ALJ erred in failing to mention anywhere in either of his two decisions, the fact that Dr. Hill diagnosed her with "vascular dementia secondary to January 23, 1992 left carotid surgery," based on "[t]he pattern of her test scores. Tr. 274-75. The ALJ, plaintiff asserts, has a duty not to reject without explanation such significant probative evidence. As noted above, however, plaintiff did not challenge the ALJ's failure to mention this condition on appeal from the ALJ's prior decision, and has not presented any compelling reasons why she should be allowed to do so now. In other words, that aspect of the ALJ's prior determination was not found wanting, and, unless plaintiff can show otherwise, remains the law of this case. She cannot do so. However, to the extent on remand that diagnosis is found to affect her ability to maintain persistence or pace, it should be taken into consideration as well.

B.    Dr. Lewy

The ALJ stated in his most recent decision that he preferred the opinion of Dr. Arthur L. Lewy, Ph.D., a non-examining consulting psychologist (Tr. 316-17, 333-38), to that provided by Dr. Hill, because Dr. Lewy "gave the most through review of the medical evidence in the record at the time of his review." Tr. 444. Later in his decision, the ALJ went on to further find in relevant part as follows:

> In his December of 2001 mental residual functional capacity assessment, Dr. Lewy found the claimant moderately limited in her ability to perform at a consistent pace. He noted that she would "persist poorly on jobs involving a high need for speed," and that her "persistence and pace" would "be best in positions where [she] could work more alone." . . . State agency consulting Psychologist Carla van Dam, Ph.D., affirmed Dr. Lewy's assessment of moderate limitations in the claimant's concentration, persistence, or pace on May 20, 2002. . . . It is significant that Dr. Lewy expressly stated that he did not find marked limitations in the claimant's persistence and pace, as found by his predecessors at DDS. . . . He pointed out that 7 years of treating notes from John S. Wendt, M.S. . . . failed to corroborate the claimant's mental complaints. Dr. Lewy also pointed out that the neuropsych examination with Dr. Hill was "very clear" in describing the claimant's interest "in being home to be with her children (her priority in life)" and that the claimant did not "have motivation to engage in vocational training." . . .
>
> I add that subsequent concerns regarding the claimant's motivation, with regard to her regular marijuana use, as well as the effect that use would have on the claimant's concentration, persistence, or pace show that the claimant's limitations in this area were perhaps even less severe even that those found by Dr. Lewy. I therefore find that Dr. Lewy's assessment of only moderate limitations is consistent with the medical evidence of record and with my limiting the claimant to simple, repetitive tasks.

Tr. 446.

Plaintiff argues the ALJ erred in preferring the opinion of Dr. Lewy to Dr. Hill, because the opinion of a non-examining psychologist cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining psychologist. A non-examining psychologist's opinion, however, as noted above, may constitute substantial evidence if it is consistent with other independent evidence in the record. It is not clear, though, the extent to which Dr. Lewy's findings concerning plaintiff's persistence and pace are consistent with those of other medical opinion sources in the record. For example, Dr. Rasmussen did not find any specific limitations with respect to persistence or pace. See Tr. 506-08. Dr. Hill, as discussed above, felt she seemed "best suited" for a job which allowed "her to work at her own pace and according to her own hours and schedule with the maximum possible flexibility." Tr. 275.

Thomas Clifford, Ph.D., another non-examining consulting psychologist, found plaintiff to have marked difficulties in maintaining persistence or pace. Tr. 297, 301. He further found plaintiff required a "totally familiar work environment" without "extraneous demands to persist." Tr. 303. As noted above, Dr. van Dam agreed with the moderate limitations on maintaining persistence or pace found by Dr. Lewy (Tr. 329, 337), but she too is a non-examining psychologist. Paul W. Hageman, M.D. – though for which, as the ALJ pointed out, there is no evidence in the record he actually treated or examined plaintiff – found her markedly limited in those areas. Tr. 352, 446. Dr. C. R. Johnson, the medical expert who testified at the first hearing, found this to be so as well. Tr. 412. Thus, the only other medical evidence in the record that is consistent with the findings of Dr. Lewy come from other non-examining psychologists. As such, the undersigned finds the ALJ's reasons for preferring Dr. Lewy's findings insufficient.

C.    Dr. Rasmussen

The ALJ also stated in his most recent decision that he preferred the opinion of Dr. Rasmussen to that of Dr. Hill, for the reason that she was "the only examining clinician who knew of" plaintiff's "extensive cannabis history and continued use." Tr. 444. In addition, the ALJ found Dr. Rasmussen had "administered the most comprehensive testing of all the clinicians who treated or examined" plaintiff, and thus her assessment of plaintiff's functioning was "likely to be the most accurate." Id. Plaintiff argues the first reason is not legitimate, because there is no evidence her history of substance abuse is sufficient to

invalidate the findings of Dr. Hill or, for that matter, any of the other medical opinion sources in the record who opined as to her mental functional abilities. For the reasons already set forth above, the undersigned agrees. That is, while Dr. Rasmussen's findings do provide some evidence that plaintiff's use of cannabis adversely affects her concentration and memory, there is no actual evidence that it impacts or has impacted her ability to maintain persistence or pace.

The undersigned also agrees that the second reason provided by the ALJ does not present a valid basis on which to prefer the opinion of Dr. Rasmussen over that of Dr. Hill. As pointed out by plaintiff, Dr. Hill administered a variety of psychological tests as well. Plaintiff argues Dr. Hill's testing was more comprehensive than that conducted by Dr. Rasmussen. While Dr. Hill's description of his testing and the results thereof may have been more detailed, based on the record before the Court the undersigned cannot say with certainty that it was more comprehensive or accurate overall than the testing and results presented by Dr. Rasmussen, though certainly it is not unreasonable to argue such as plaintiff has done here. For the same reason, it was error for the ALJ to make the opposite finding here. Rather, given that psychological testing was employed by both medical sources, more was needed from the ALJ to support his finding that Dr. Rasmussen's opinion carried more weight than Dr. Hill's.

D.   <u>Dr. Hageman</u>

As noted above, an opinion regarding plaintiff's ability to maintain persistence and pace was given by Dr. Hageman. With respect to that opinion the ALJ found in relevant part as follows:

> In June of 2003, a Dr. Paul Hageman assessed moderate to marked limitations in virtually every area addressed by the mental residual functional capacity assessment. . . . The doctor listed 1992 as the date of onset of these limitations, explaining that the claimant had not experienced significant improvement since her brain surgery in that year. . . . I give little weight to this opinion for the following reasons. First, this assessment does not explain Dr. Hageman's relationship to the claimant. The only clue as to the source of this document is the fax notation on the top of the page stating "from Good Sam Child & Family." . . . I note that the medical evidence of record contains records from various departments at Good Samaritan Hospital from May of 1992 to September of 1992 . . . , as well as some records from 2006 from Good Samaritan Family Medicine at South Hill . . . It is possible that the claimant was treated by a colleague of this Dr. Hageman. But none of the chart notes from Good Samaritan contains any records from a Dr. Hageman, nor are there any other records in the medical evidence of record from this person. It is therefore unclear on what he based his assessment. Furthermore, in his assessment he did not state that he had treated the claimant since 1992, so there is no way to know on what objective medical evidence, if any, he traced the claimant's alleged limitations from that date to present. Either this opinion was based on speculation or on the claimant's subjective complaints. Either of these is unacceptable as a basis for a functional assessment. I have no knowledge of this person's expertise, treating relationship with the claimant, or source of his

assessment. For these reasons, I am unable to give much weight to this opinion.
Tr. 446. Plaintiff argues the ALJ erred in rejecting Dr. Hageman's findings for the above reasons, asserting that the ALJ should have re-contacted Dr. Hageman to determine the actual basis for those findings. The undersigned agrees.

An ALJ's duty to further develop the evidence in the record is triggered when it "is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). The Commissioner's own regulations provide that when evidence received from a medical source is inadequate to determine whether a claimant is disabled, that source will be re-contacted to seek additional evidence or clarification, when his or her report "contains a conflict or ambiguity that must be resolved, . . . does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1).

Clearly, the ALJ rejected the findings provided by Dr. Hageman here because it was impossible to ascertain either his relationship to plaintiff or the objective medical basis for his opinion regarding her limitations. Neither the record nor the ALJ's decision, however, indicates the ALJ ever attempted to re-contact Dr. Hageman as required in such situations. Indeed, the ALJ seems not to have even attempted to find out whether the additional information he appears to have felt necessary in order to properly evaluate Dr. Hageman's findings was "readily available" also as required by 20 C.F.R. § 416.912(e)(1). The only exception to this requirement is if it is known "from past experience that the source either cannot or will not provide the necessary findings." 20 C.F.R. § 416.912(e)(2). Thus, while it is true that an ALJ need not accept the opinion of a medical source, if that opinion is "brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole," the ALJ first has the duty to determine if such support for the opinion in question can be made readily available. Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957; Tonapetyan, 242 F.3d at 1149. This the ALJ did not do.

E.     Dr. Khemani

In early May, 2007, Dr. Pravin Khemani, M.D., who had begun treating plaintiff in September 2006, completed a functional capacity questionaire regarding her headaches, in which he stated he had only seen plaintiff twice during that time, the last visit occurring in December 2006. Tr. 537. Dr. Khemani stated that plaintiff suffered from daily, severe headaches, which lasted from a few hours to a day. Id.

However, he also noted that plaintiff had been off her headache medications for two to three months and that he was not currently taking any medications therefor. Tr. 539. Dr. Khemani opined that the headaches had lasted or could be expected to last for at least 12 months, that they would generally preclude her from performing even basic work activities, and that she would sometimes need to take unscheduled breaks from work on a daily basis. Id. He further opined that based on plaintiff's reported problems with memory, concentration and job-related stress, she could tolerate a low-stress job, although she was likely to be absent from work more than four times a month as a result of her impairment. Tr. 540. In addition, Dr. Khemani opined that plaintiff would have marked deficiencies of concentration, persistence or pace and four or more repeated episodes of decompensation. Id.

In his most recent decision, the ALJ gave "very little weight" to Dr. Khemani's "assessment of marked limitations and decompensations." Tr. 447. The ALJ found that assessment was not supported by the medical evidence in the record, noting that plaintiff had received "very little treatment" since the date of the first hearing, and, in particular, that the record was "virtually blank from July of 2003 to 2006." Tr. 447. Plaintiff argues this was not a valid reason for rejecting Dr. Khemani's opinion, pointing out that she testified that she received mental health treatment during this time period. See Tr. 585-86. However, the record fails to show little, if any, in the way of treatment for the headaches Dr. Khemani found had resulted in such marked limitations. Plaintiff further criticizes the ALJ for not asking her about her other medical treatment during that time, but she did not claim to have received other treatment at the second hearing, nor has she made any showing that any records of such treatment exist.

The ALJ also rejected Dr. Khemani's opinion in part because the record indicated that plaintiff's headaches "were largely controlled until late November-early December 2006," when she reported an increase in the intensity and frequency thereof. Tr. 447. Plaintiff argues, without stating why, that the fact that her headaches were controlled is not a convincing reason for rejecting Dr. Khemani's opinion. The undersigned disagrees. Dr. Khemani based his opinion that plaintiff was markedly limited in her mental functional capabilities on the nature and frequency of her headaches and their related symptoms. To the extent that those headaches were largely controlled until the last visit she had with Dr. Khemani, certainly does call into question the validity of his assessed limitations. Accordingly, the undersigned finds this to be a valid basis for discounting Dr. Khemani's opinion.

Another reason the ALJ gave for rejecting that opinion was plaintiff's lack of compliance in taking the medication she was prescribed by her medical providers for her headaches. Tr. 447-48. Specifically, the ALJ found such failure to comply "sheds doubt on the accuracy of Dr. Khemani's assessment." See Tr. 448. Plaintiff argues that Dr. Khemani is a board-certified neurologist, and, as such, he most certainly is qualified to assess her limitations. However, it is clear that the Dr. Khemani's assessment was based at least in part on plaintiff's own self-reports. See Tr. 537-40. Thus, to the extent plaintiff also is reporting and the record shows she has not been compliant with her medications, despite her allegedly severe and disabling headaches, this certainly calls Dr. Khemani's reliance on those reports into question, and thus his overall opinion regarding the impact plaintiff's headaches have on her functioning.

As with Dr. Hill, the ALJ discounted Dr. Khemani's opinion because plaintiff did not inform him "of her regular marijuana use, which clearly could be the sole cause or contributing cause to any decrease in concentration, persistence, or pace or perceived decompensations." Tr. 448. Plaintiff argues this finding is largely speculative. The undersigned agrees. As discussed above, while Dr. Rasmussen's evaluation of plaintiff does provide evidence that her history of cannabis abuse and continuing use thereof may adversely affect her memory and concentration and her ability to perform her activities of daily living, there is little, if any, evidence that it has affected her persistence or pace, or that plaintiff used cannabis close enough in time to when Dr. Khemani saw her to impact his assessment thereof.

This last reason, therefore, does not provide a valid reason for rejecting Dr. Khemani's assessment of plaintiff's limitations. Nevertheless, because the ALJ's other stated reasons, as discussed above, were all valid, the undersigned finds the ALJ's rejection of Dr. Khemani's findings and opinion overall to have been proper. However, given that, also as discussed above, the ALJ erred in rejecting the opinions of Dr. Hill and Dr. Hageman in favor of those of Drs. Lewy and Rasmussen, remand for further consideration of the evidence in the record concerning plaintiff's persistence and pace again is warranted.

F.   Dr. Velling and Dr. Snell

Plaintiff argues the ALJ erred in failing to mention in his decision that in a treatment note dated March 19, 2004, David Velling, M.D., diagnosed her with chronic migraine headaches, cervicogenic pain and multiple psychiatric disorders. See Tr. 526. Nowhere in that treatment note, however, does Dr. Velling give any opinion regarding any effects these conditions may have with respect to plaintiff's

persistence or pace. Plaintiff's abilities in those areas, as previously discussed, is the sole issue on which this matter was remanded, and plaintiff has failed to establish compelling grounds for departing from the Court's prior ruling in regard thereto as the law of the case.

For the same reasons, the undersigned finds without merit plaintiff's argument that the ALJ erred in failing to mention that on April 29, 2007, two of plaintiff's mental health treatment providers diagnosed her with a depressive disorder, a panic disorder and a global assessment of functioning ("GAF") score of 55, and noted that she presented "with a constricted, tearful, and sad affect." Tr. 542, 544. Again, these diagnosis and reported symptoms fail to shed any light on plaintiff's ability to maintain persistence or pace. As such, the undersigned declines to find what was reported by these mental health providers to constitute significant probative evidence regarding plaintiff's functioning in those areas.

IV.     The Vocational Evidence in the Record

Plaintiff argues that in neither of his decisions did the ALJ properly consider the functional capacity evaluation completed by Vicki Olson, OTR/L, in early January 2003. In that evaluation, Ms. Olson stated that although plaintiff demonstrated the ability to perform the physical demands of sedentary work, it was felt that she was unable "to maintain a regular 40-hour week at this level." Tr. 122. Ms. Olson further stated that plaintiff "would benefit from being able to work at her own pace, day or night, in order to work 20 to 30 hours per week." Id. Plaintiff, however, did not raise this issue when she appealed the ALJ's first decision to this Court. She has not provided any compelling reasons why she should be allowed to do so now. Thus the undersigned declines to remand this matter on the ALJ's subsequent failure to address this evidence in his second opinion. Nevertheless, on remand the Commissioner shall review this evidence as well to see if it has any probative value in light of the medical evidence in the record concerning plaintiff's problems with persistence and pace.

V.      The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as

1  long as that determination is supported by substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148
2  (9th Cir. 2001).

3      To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for
4  the disbelief." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must
5  identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>;
6  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is
7  malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."
8  <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. <u>O'Donnell v.</u>
9  <u>Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

10     In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility
11 evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other
12 testimony that "appears less than candid." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ
13 also may consider a claimant's work record and observations of physicians and other third parties
14 regarding the nature, onset, duration, and frequency of symptoms. <u>Id.</u>

15     Plaintiff argues the ALJ committed legal error by failing to properly consider her testimony about
16 her symptoms and functional limitations, and asserts the ALJ's reasons for discounting her credibility are
17 unconvincing.  The undersigned declines to do so, as plaintiff's arguments and assertions are without any
18 merit.  First, as noted above, the Court affirmed the adverse credibility determination the ALJ made in his
19 prior decision, and thus, unless plaintiff can provide compelling grounds for finding otherwise, it remains
20 the law of this case.  No such grounds have been provided.  Indeed, plaintiff provides no specific reasons
21 as to why she believes the ALJ erred here.  Second, the ALJ provided additional valid reasons for finding
22 plaintiff still to be incredible following the date of the prior decision – namely her failure to comply with
23 prescribed treatment for her headaches and her inconsistent statements regarding her history of cannabis
24 abuse and continuing use thereof. <u>See</u> Tr. 444, 447-48; <u>see also</u> <u>Fair</u>, 885 F.2d at 603 (failure to assert
25 good reason for not following prescribed treatment can cast doubt sincerity of claimant's testimony).

26 VI.    <u>The ALJ's Assessment of Plaintiff's Residual Functional Capacity</u>

27     If a disability determination "cannot be made on the basis of medical factors alone at step three of
28 the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and

assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, to stand/walk for 4 hours in an 8-hour workday, and to sit for 6 hours in an 8-hour workday. She is able occasionally to climb ramps and stairs, but unable to climb ladders, ropes, or scaffolds. She is able occasionally to balance. She cannot work with hazards (machinery, heights, etc.).

Tr. 443. Plaintiff argues the ALJ erred by failing to consider all of her limitations described by Dr. Hill, Dr. Khemani and Ms. Olson, including her impaired persistence and pace, her need for unscheduled work breaks, and her need for extra days off. As discussed above, however, the ALJ properly discounted the opinion of Dr. Khemani, and thus was not required to adopt his limitations. In addition, because the sole issue here is plaintiff's problems with her persistence and pace, and any effect they may have on her ability to perform other jobs, the ALJ also was not required to include any limitations with respect to her alleged need for extra days off. As discussed above, though, the ALJ did err in assessing much of the evidence in the record concerning plaintiff's ability to maintain persistence and pace – including her alleged need for unscheduled breaks with respect to persistence – and thus it is unclear whether the ALJ's assessment of plaintiff's RFC is accurate.

VII.    The ALJ's Step Five Analysis

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is

able to do. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Embrey</u>, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed a hypothetical question to the vocational expert at the second hearing which included limitations substantially similar to those contained in the ALJ's assessment of plaintiff's residual functional capacity. Tr. 590. In response thereto, the vocational expert testified that there were other jobs plaintiff could perform. Tr. 590-91. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 449. Plaintiff argues that given the ALJ's errors in evaluating the medical evidence in the record and therefore in assessing her RFC, the hypothetical question the ALJ posed did not include all of her mental functional limitations. The undersigned agrees. As discussed above, it is uncertain, given the errors of the ALJ in assessing the medical evidence in the record regarding plaintiff's problems with persistence and pace, whether plaintiff's residual functional capacity assessment is accurate. It also is unclear, therefore, whether the hypothetical question the ALJ posed is entirely complete.

Plaintiff further argues that the vocational expert testified that an individual who would miss two days of work a month would have a problem vocationally. Tr. 595. Again, however, the only issue before the Court here is the evidence in the record concerning plaintiff's persistence and pace, not plaintiff's ability to keep attendance in the workplace. In addition, as discussed herein, plaintiff has failed to establish compelling grounds for departing from the Court's prior ruling and opening it up for

consideration of other issues, such as the one the undersigned is being asked to consider here. Nor, for that matter, even if it were found to be proper to consider it here, has plaintiff established that the medical or other evidence in the record as a whole supports a finding that she would miss that many days of work.

VIII.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence in the record concerning plaintiff's problems with persistence and pace, and how they affect her residual functional capacity, and thus her ability to perform other work existing in significant numbers in the national economy, this matter should be remanded to the Commissioner for further administrative proceedings. Once more, as noted in the Court's previous order, remand here is solely for re-consideration of these specific issues.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those

objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 29, 2008**, as noted in the caption.

DATED this 6th day of August, 2008.

Karen L. Strombom
United States Magistrate Judge